UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD HACKERMAN, :
    Appellant :
     :
    v. : CASE NO. 1:17-CV-395
     :
DONALD LINWOOD DEMEZA, :
    Appellee :

*M E M O R A N D U M*

*I.    Introduction*

Presently before the court is an appeal from the United States Bankruptcy Court for the Middle District of Pennsylvania filed by appellant Richard Hackerman ("Hackerman"), an unsecured creditor in the underlying Chapter 13 bankruptcy case. (Doc. 1). The appellee is the debtor, Donald Linwood Demeza ("Demeza"). Hackerman has appealed the bankruptcy court's February 21, 2017 order (Doc. 1-1 at 11) denying his motion to convert the bankruptcy case to Chapter 7, as well as the bankruptcy court's February 23, 2017 amended order (Doc. 1-1 at 13) confirming Demeza's Chapter 13 plan and overruling Hackerman's objection to the plan.[1] (Doc. 1 at 1). For the following reasons, the court will vacate the February 23, 2017 order and remand this matter to the bankruptcy court for further consideration in accordance with this opinion.

---

[1] The bankruptcy court's February 23, 2017 order confirming the Chapter 13 plan was amended the same day, apparently leaving the text of the order unchanged but adding—in the corresponding docket annotation—that the court was "[o]verruling the objection of Richard Hackerman." See In re Demeza, No. 1:16-bk-02789 (Bankr. M.D. Pa. July 5, 2016), ECF Nos. 93 & 94.

*II.         Background* [2]

Demeza, the debtor, resides at 500 Orrtanna Road, Orrtanna, Adams County, Pennsylvania (the "Property"), which is best described as a "farmette" or small farm. Demeza is self-employed as a horse trainer, and agreed to board Hackerman's pregnant mare at the Property. While in Demeza's care, the broodmare began foaling, but due to injuries sustained during the foaling process both the broodmare and foal suffered significant injuries and had to be euthanized. Hackerman asserts that Demeza is liable for the death of the horses.

By letter dated December 12, 2012, Hackerman's attorney notified Demeza of Hackerman's intent to pursue a claim for the deaths of the broodmare and her foal. (Designated Record of Appellant, Doc. 2-1 [hereinafter "R."] at 96). Demeza responded to this letter via email on December 26, 2012, indicating that he was not insured and that he intended to hire an attorney to defend against any claims. (R. at 98-99). On January 7, 2013, Demeza provided his attorney's contact information to Hackerman's counsel via email. (R. at 98).

On February 5, 2013, Demeza transferred a one-half interest in the Property to his adult daughter, Ashley Demeza ("Ashley"), to be held as joint tenants with the right of survivorship. (R. at 103-05). This transfer of ownership was undertaken so that Demeza could qualify for a loan, secured by the Property, as Demeza had inadequate income to qualify for the loan by himself and needed Ashley as a joint obligor

---

[2] Unless otherwise noted, the following facts are taken from the bankruptcy court's February 21, 2017 opinion denying Hackerman's motion to convert the case to Chapter 7. See In re Demeza, 567 B.R. 473 (Bankr. M.D. Pa. 2017). Facts taken from the February 21, 2017 bankruptcy court opinion have been determined to be free of "clear error." See In re Anes, 195 F.3d 177, 180 (3d Cir. 1999) ("In core matters, the District Court reviews the Bankruptcy Court's findings of fact for clear error . . . .").

on the note and mortgage. On June 6, 2013, Ashley executed a Power of Attorney, giving Demeza authority to, among other things, mortgage the Property. (R. at 108-09). On June 17, 2013, Demeza took out a loan for approximately $125,000 secured by the Property. (R. at 111-24). Prior to this June 17, 2013 mortgage, the Property was owned solely by Demeza and was unencumbered. (See R. at 174-75; Tr. of Dec. 6, 2016 Hr'g on Mot. to Convert Case to Chapter 7, at 29-30).

With the proceeds from this loan, Demeza paid various debts totaling $31,000, including personal credit card debt and $22,500 of a student loan incurred for Ashley's education.[3] Three thousand dollars was also used to pay down Ashley's credit card. Demeza used the remaining funds to cover expenses related to the maintenance of several of his horses, as well as to pay for legal and personal expenses. As of December 6, 2016, the approximately $87,000 cash payout Demeza received from the loan had been entirely depleted.

On October 1, 2013, Hackerman's counsel sent a demand letter to Demeza's attorney seeking $135,000 "for the mare and foal who died as a result of the gross negligence of Mr. Demeza." (R. at 126). Apparently, a settlement could not be reached, and on November 26, 2013, Hackerman filed suit in the district court, asserting a claim sounding in tort against Demeza and his business. Hackerman v. Demeza, No. 1:13-cv-02883 (M.D. Pa. Nov. 26, 2013), ECF No. 1. The case was litigated until a suggestion of bankruptcy was filed, and on July 11, 2016, the case was stayed due to Demeza's bankruptcy filing. Id., ECF Nos. 104, 105.

---

[3] There is some confusion as to whether Demeza is the sole obligor on this student loan, or whether Ashley is a co-obligor. Demeza's bankruptcy schedules indicate that Ashley is a co-obligor, but the student loan billing statement designates Demeza as the sole obligor. This issue was never definitively resolved below with, for example, the production of loan origination documents.

3

Hackerman filed a second lawsuit on June 15, 2016, alleging, among other things, fraud, fraudulent conveyance under Pennsylvania's Uniform Fraudulent Transfer Act, conspiracy, and unjust enrichment.  Hackerman v. Demeza, No. 1:16-cv-01154 (M.D. Pa. June 15, 2016), ECF No. 1.  This lawsuit is based on the transfer of the one-half interest in the Property to Ashley shortly after Demeza received notice of Hackerman's claims.  Id.  This case was also stayed in light of Demeza's bankruptcy filing.  Id., ECF No. 24.

In April of 2016, Demeza contacted a bankruptcy attorney and, several months later, filed a Chapter 13 petition and plan on July 5, 2016.  The Chapter 13 Trustee initially objected to the plan, but subsequently withdrew his objection.  Hackerman also objected to the plan, arguing that the bankruptcy petition was filed in bad faith, that the Chapter 13 plan was proposed in bad faith in violation of 11 U.S.C. § 1325(a)(3), that the Chapter 13 plan fails to pay as much to unsecured creditors as they would receive in a Chapter 7 liquidation in violation of 11 U.S.C. § 1325(a)(4), that Demeza has failed to dedicate all of his disposable income to his plan as required by 11 U.S.C. § 1322(a)(1), and that the Chapter 13 plan is not feasible due to Demeza's lack of income, ostensibly in contravention of 11 U.S.C. § 1325(a)(6).  (R. at 80-89).

On September 4, 2016, the same day Hackerman filed his objection, he also filed a motion to covert the Chapter 13 case to Chapter 7 ("motion to convert").  In the motion to convert, Hackerman's primary contentions were that (1) the Chapter 13 petition was not filed in good faith; (2) the Chapter 13 plan was not proposed in good faith; and (3) the Chapter 13 plan fails to pay as much to unsecured creditors as they would receive in a Chapter 7 liquidation in violation of 11 U.S.C. § 1325(a)(4).  In re

Demeza, No. 1:16-bk-02789 (Bankr. M.D. Pa. July 5, 2016), ECF Nos. 28, 74. An evidentiary hearing on the motion was held on December 6, 2016, after which the parties submitted further briefing. In his subsequent briefing, Hackerman renewed the primary arguments contained in his motion to convert. (R. at 976-89). In particular, Hackerman asserted, in great detail, that a Chapter 7 liquidation would result in a greater payout to unsecured creditors than the proposed Chapter 13 plan, thus rendering the plan unfit for confirmation under 11 U.S.C. § 1325(a)(4). (R. at 1024-26).

On February 21, 2017, in a written opinion, the bankruptcy court denied Hackerman's motion to convert. In re Demeza, 567 B.R. 473, 480 (Bankr. M.D. Pa. 2017). After a thorough analysis regarding good faith in Chapter 13 proceedings, the court held that Demeza's petition had been filed in good faith. Id. at 476-80. The court also found "that the record supports a finding that the Chapter 13 plan was filed in good faith," but reserved making a final determination on that issue, "particularly in regard to [Demeza]'s ability to fund the plan, until the hearing on confirmation." Id. at 480.

On February 22, 2017, the bankruptcy court held the Chapter 13 confirmation hearing. In re Demeza, No. 1:16-bk-02789 (Bankr. M.D. Pa. July 5, 2016), ECF No. 92. At that hearing, the court determined that Demeza would be given an opportunity to make payments under the Chapter 13 plan—despite potential income issues—and confirmed the plan, implicitly finding that the plan had been filed in good faith. Id., ECF No. 109 at 2-8. On February 23, 2017, the court issued its order confirming the Chapter 13 plan and overruling Hackerman's objection. Id., ECF No. 94.

Hackerman timely filed a notice of appeal on March 2, 2017, id., ECF No. 98, and the appeal was docketed in this court the following day, (Doc. 1). The parties

5

have each filed a designated record, and the appeal has been fully briefed. Neither party has requested oral argument.

III.     *Standard of Review*

This court has jurisdiction to hear the instant appeal under 11 U.S.C. § 158(a)(1). On appeal, the district court will "review the bankruptcy court's legal determinations *de novo*, its factual findings for clear error[,] and its exercise of discretion for abuse thereof." In re Klaas, 858 F.3d 820, 827 (3d Cir. 2017) (quoting In re Trans World Airlines, Inc., 143 F.3d 124, 131 (3d Cir. 1998)). Pursuant to Federal Rule of Bankruptcy Procedure 8019(b)(3),[4] the court will issue a decision without oral argument.

IV.     *Discussion*

In his notice of appeal, Hackerman indicates that he is appealing both the bankruptcy court's denial of his motion to convert, as well as the confirmation of Demeza's Chapter 13 plan. He confines the issues on appeal, however, to "[w]hether the Chapter 13 Plan proposed by [Demeza] complies with the requirements [of] 11 USC [§] 1325(a) which requires (3) the plan has been proposed in good faith and not by any means forbidden by law and (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date[.]" (Doc. 6 at 3).

Hackerman's briefing also fails to address the bankruptcy court's denial of the motion to convert. Furthermore, the relief he requests speaks only to the bankruptcy

---

[4] Federal Rule of Bankruptcy Procedure 8019(b)(3) states, in pertinent part, "Oral argument must be allowed in every case unless the district judge . . . examine[s] the briefs and record and determine[s] that oral argument is unnecessary because . . . the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument."

6

court's confirmation of the Chapter 13 plan. Accordingly, because Hackerman has waived any challenge to the denial of the motion to convert by failing to address it in his briefing, this court will not disturb the bankruptcy court's order denying this motion. See infra Section *IV.* A. (discussing waiver on appeal). Rather, the court will address, in turn, the two issues regarding the Chapter 13 plan that Hackerman designates as the relevant issues for this appeal.

### A. Good Faith of the Plan Requirement Under 11 U.S.C. § 1325(a)(3)

In his opening brief, Hackerman asserts that the issues presented on appeal include whether the Chapter 13 plan meets the requirements for confirmation found in 11 U.S.C. § 1325(a)(3) and (a)(4). (Doc. 6 at 3, 12). He appears, however, to have abandoned any argument regarding the good faith requirement under § 1325(a)(3) in the rest of his brief. (See Doc. 6 at 12-17). Indeed, the entire argument of his opening brief focuses solely on the question of whether the Chapter 13 plan is confirmable in light of the requirements of § 1325(a)(4). (Id.) After Demeza filed his brief in response, which included a full argument on good faith under § 1325(a)(3), (Doc. 10 at 11-13), Hackerman added, in his reply brief, a short discussion of § 1325(a)(3) consisting of a recitation of the statute and governing case law and one sentence of application to the case at hand, (Doc. 11 at 9-10). Oddly, Hackerman fails to mention, let alone point to any error in, the bankruptcy court's opinion on this issue, which he contends was incorrectly decided.

"It is well settled that an appellant's failure to identify *or* argue an issue in his opening brief constitutes waiver of that issue on appeal." United States v. Albertson, 645 F.3d 191, 195 (3d Cir. 2011) (emphasis added) (quoting United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005)). Indeed, "absent extraordinary circumstances, briefs must

7

contain statements of all issues presented for appeal, *together with supporting arguments and citations.*" Nagle v. Alspach, 8 F.3d 141, 143 (3d Cir. 1993) (emphasis added) (quoting Simmons v. City of Philadelphia, 947 F.2d 1042, 1065 (3d Cir. 1991)); see also FED. R. BANKR. P. 8014(a); Colo. Outfitters Ass'n v. Hickenlooper, 823 F.3d 537, 546 n.8 (10th Cir. 2016) (raising an issue in "Statement of the Case" but not addressing or developing it in argument section results in waiver); Cinto-Velasquez v. Lynch, 817 F.3d 602, 604 n.1 (8th Cir. 2016) ("Cinto-Velasquez's brief states that the issues on appeal include the denial of withholding of removal and relief under the CAT. However, the brief does not address those issues, and they are therefore waived." (citing FED. R. APP. P. 28(a)(8))).

Raising an issue in a reply brief in a cursory manner will generally not preserve the issue for appellate review. See Lunderstadt v. Colafella, 885 F.2d 66, 78 (3d Cir. 1989). Failure to adequately address the decision from which a party is appealing can also constitute waiver. See Thompson v. Bank of Am. Nat'l Ass'n, 783 F.3d 1022, 1027 (5th Cir. 2015) ("[T]he Thompsons fail to address the district court's reasoning in their briefs or explain how [its] rationale was erroneous. As a result, they have waived the issue on appeal.").

Accordingly, the court finds that although Hackerman generally included the issue of the good faith of the plan under § 1325(a)(3) in his opening brief's statement of the issues presented and summary of the argument, his omission of any argument pertaining to this statutory section results in waiver of this issue. Albertson, 645 F.3d at 195; Nagle, 8 F.3d at 143. His cursory treatment of § 1325(a)(3) at the end of his reply brief does not rectify the matter. A mere one-sentence application that contains only his

version of the facts, and which completely fails to discuss the bankruptcy court's decision on this issue, is woefully insufficient to preserve the issue for appellate review. Moreover, there are no "extraordinary circumstances" presented here to excuse the waiver. See Albertson, 645 F.3d at 195.

Even if Hackerman had not waived this issue, the court can find no clear error in the bankruptcy court's determination that the Chapter 13 plan was proposed in good faith and therefore meets the requirements of § 1325(a)(3). The bankruptcy court undertook a thorough analysis of many of the factors outlined in In re Lilley, 91 F.3d 491 (3d Cir. 1996), and found, under the totality of the circumstances, that both the petition and plan were filed in good faith. In re Demeza, 567 B.R. at 477-80; In re Demeza, No. 1:16-bk-02789 (Bankr. M.D. Pa. July 5, 2016), ECF No. 109 at 2-8.

For a Chapter 13 plan to be confirmed, it must, among other things, have "been proposed in good faith[.]" 11 U.S.C. § 1325(a)(3). It appears that the Third Circuit has not directly addressed the good faith requirement under § 1325(a)(3).[5] Bankruptcy courts in this circuit, when determining whether a Chapter 13 plan was proposed in good faith, apply the same analysis used for determining whether a Chapter 13 bankruptcy petition was filed in good faith. See, e.g., In re McKinney, 507 B.R. 534, 551-52 (Bankr. W.D. Pa. 2014); In re Konowicz, 470 B.R. 725, 730 (Bankr. D.N.J. 2012); In re Parke, 369

---

[5] The Third Circuit has, however, "considered and rejected the argument that a chapter 13 plan violates the good faith standard of § 1325(a)(3) merely because it provides for nominal payments to unsecured creditors." In re Jensen, 369 B.R. 210, 232 n.56 (Bankr. E.D. Pa. 2007) (citing In re Hines, 723 F.2d 333 (3d Cir. 1983)).

B.R. 205, 207 (Bankr. M.D. Pa. 2007); In re Jensen, 369 B.R. 210, 232-33 (Bankr. E.D. Pa. 2007).[6]

As such, bankruptcy courts in this circuit apply a case-by-case, totality-of-the-circumstances analysis that considers the following non-exhaustive list of factors: "[(1)] the nature of the debt . . .; [(2)] the timing of the petition; [(3)] how the debt arose; [(4)] the debtor's motive in filing the petition; [(5)] how the debtor's actions affected creditors; [(6)] the debtor's treatment of creditors both before and after the petition was filed; and [(7)] whether the debtor has been forthcoming with the bankruptcy court and the creditors." In re Meyers, 491 F.3d 120, 125 (3d Cir. 2007) (quoting In re Lilley, 91 F.3d at 496). "The determination of bad faith is "a fact intensive determination better left to the discretion of the bankruptcy court." Id. (quoting In re Lilley, 91 F.3d at 496). The debtor has the burden of proof to show that a plan was proposed in good faith pursuant to § 1325(a)(3). In re Sullivan, 326 B.R. 204, 211 (B.A.P. 1st Cir. 2005).

Neither party has addressed the standard of review applicable to an appeal from a bankruptcy court's determination that a Chapter 13 plan was proposed in good faith as required by § 1325(a)(3). The few courts in this circuit that have addressed appeals from determinations under § 1325(a) are not entirely consistent in their approach. Compare In re Goddard, 212 B.R. 233, 237 (D.N.J. 1997) ("Whether a Chapter 13 petition or plan has been proposed in good faith is a question of fact subject to the clearly erroneous standard of review.") and In re Oglesby, 158 B.R. 602, 607 (E.D. Pa. 1993) ("Whether the plan is proposed in good faith [under § 1325(a)(3)] is a factual

---

[6] Other circuits use different multi-factor, totality-of-the-circumstances tests specific to determining whether a Chapter 13 plan was proposed in good faith. See, e.g., In re Brown, 742 F.3d 1309, 1316-17 (11th Cir. 2014); In re Welsh, 711 F.3d 1120, 1128 (9th Cir. 2013); In re Smith, 286 F.3d 461, 466 n.3 (7th Cir. 2002); In re Alt, 305 F.3d 413, 419 (6th Cir. 2002); In re Young, 237 F.3d 1168, 1174-75 (10th Cir. 2001); In re Solomon, 67 F.3d 1128, 1134 (4th Cir. 1995).

10

determination for the bankruptcy court to resolve."), with In re Haas, 203 B.R. 573, 574 (E.D. Pa. 1996) (applying plenary review over bankruptcy court's § 1325(a)(5) determination "[s]ince the issue . . . involves whether the Debtor has satisfied the legal requirements for confirmation of a Chapter 13 plan").

Many courts of appeals in sister circuits, however, have spoken directly to the standard of review applicable to a bankruptcy court's determination of good faith under § 1325(a)(3). Those courts uniformly consider it to be a factual finding and apply the "clearly erroneous" standard of review. See In re Brown, 742 F.3d 1309, 1315 (11th Cir. 2014); In re Crager, 691 F.3d 671, 675 (5th Cir. 2012); In re Smith, 286 F.3d 461, 465 (7th Cir. 2002); In re Young, 237 F.3d 1168, 1172 (10th Cir. 2001); In re LeMaire, 898 F.2d 1346, 1349 (8th Cir. 1990); In re Caldwell, 895 F.2d 1123, 1127 (6th Cir. 1990); In re Chisum, 847 F.2d 597, 600 (9th Cir. 1988).

Therefore, in light of the foregoing persuasive authority, this court will apply the "clearly erroneous" standard when reviewing the bankruptcy court's determination that Demeza's Chapter 13 plan was proposed in good faith. This standard of review is highly deferential and requires a "definite and firm conviction that a mistake has been committed" in order to part ways with the bankruptcy court. See Green v. Fornario, 486 F.3d 100, 104 (3d Cir. 2007) (citation omitted).

In its opinion on the motion to convert, the bankruptcy court simultaneously analyzed good faith regarding the filing of the Chapter 13 petition and the proposal of the Chapter 13 plan. In re Demeza, 567 B.R. 473, 477 (Bankr. M.D. Pa. 2017). Of the seven Lilley factors, the court addressed five that it found relevant: (a) the nature of the debt, (b) the timing of the petition, (c) the debtor's motive in filing the petition, (d) the debtor's

11

treatment of creditors, and (e) whether the debtor has been forthcoming with the bankruptcy court and with creditors. Id. at 478-80.

The bankruptcy court made the following relevant findings. It found that the nature of the debt in Demeza's petition did not support a finding of bad faith; that mounting tax liabilities and other substantial, liquidated judgments against Demeza—rather than Hackerman's contingent, unliquidated claim—precipitated the filing of Demeza's bankruptcy petition; that it was "not persuaded that it is more likely than not that a fraudulent conveyance action exists to be pursued by a trustee," as good cause was shown for the transfer of the one-half interest in the Property and because the evidence did not support that the payment of student loan debt benefitted Ashley rather than Demeza; and, finally, that Demeza's filings with, and representations to, the bankruptcy court failed to show any material misrepresentations, concealment of property, or lack of candor. Id. At the confirmation hearing, the court found the plan feasible and determined that Demeza should be given a chance to make payments according to the plan despite his fluctuating income. In re Demeza, No. 1:16-bk-02789 (Bankr. M.D. Pa. July 5, 2016), ECF No. 109 at 7-8. While Hackerman may disagree with the bankruptcy court's determination on some or all of these factors, he fails to point to any part of the court's decision or rationale that he believes was erroneous.[7]

---

[7] Hackerman does claim that "[t]he [bankruptcy] court's finding that [sic] $22,500.00 payment was for the Debtor's obligation is clearly erroneous." (Doc. 11 at 5). The bankruptcy court, however, made no such finding. It merely found that "[t]he evidence at trial did not support th[e] conclusion" that this $22,500 student loan payment from the mortgage proceeds benefitted Ashley "rather than" Demeza. In re Demeza, 567 B.R. at 479. Such a finding leaves open the possibility that it benefitted both Ashley and Demeza, if, for example, they are co-obligors on the student loan. As explained above, the issue of whether Ashley is a co-obligor on this loan, or whether Demeza is the sole obligor, has not been definitively resolved. See supra note 3. There is evidence supporting both possibilities. The bankruptcy court's finding that the evidence did not support that only Ashley benefitted from this student loan payment, therefore, is not clearly erroneous.

12

Rather, it appears as though Hackerman is generally asserting that the bankruptcy court came to the wrong conclusion regarding the good faith of the plan. However, after review, this court cannot conclude that any particular finding regarding the good faith of the plan was clearly erroneous, and thus cannot conclude that the bankruptcy court's ultimate determination—that the Chapter 13 plan was proposed in good faith—was made in error. The court, therefore, will not disturb the bankruptcy court's finding that the Chapter 13 plan was proposed in good faith as required by 11 U.S.C. § 1325(a)(3).

### B. The Bankruptcy Court Failed to Make the Appropriate Findings Regarding 11 U.S.C. § 1325(a)(4)

Hackerman's main focus on appeal is whether the Chapter 13 plan meets the requirements found in 11 U.S.C. § 1325(a)(4). He contends that it does not. Because the bankruptcy court failed to make the appropriate findings on the record regarding this claim, remand is required.[8]

Under § 1325(a)(4), one of the requirements of a confirmable Chapter 13 plan is that

> the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date[.]

11 U.S.C. § 1325(a)(4). This provision is often called the "Best Interests of the Creditors Test" or the "Liquidation Alternative Test." In re McKinney, 507 B.R. 534, 540 (Bankr. W.D. Pa. 2014). Worded differently, § 1325(a)(4) requires "that unsecured creditors will

---

[8] Because the record is insufficient to review the § 1325(a)(4) claim, the court will forego a discussion of the applicable standard of review, as again neither party has briefed this issue.

13

be paid, at a minimum, the amount which they would be paid if the case were a hypothetical chapter 7 liquidation case." In re Cumba, 505 B.R. 110, 114 (Bankr. D.P.R. 2014). The purpose of the provision is "to ensure that creditors are no worse off under a plan of reorganization than they would be with the Debtor in [C]hapter 7." In re W.R. Grace & Co., 475 B.R. 34, 141 (D. Del. 2012) (alteration in original) (internal citation and quotation marks omitted) (discussing nearly identical best interests of the creditors test found in Chapter 11); In re Cumba, 505 B.R. at 114 (explaining that § 1325(a)(4) is "designed to protect the unsecured creditors in Chapter 13 cases").

In In re Cumba, the bankruptcy court thoroughly set forth the proper procedure for determining whether a Chapter 13 plan complies with § 1325(a)(4):

> To determine compliance with the [best interests of the creditors] test, a hypothetical liquidation of the debtor's estate under Chapter 7 on the effective date of the plan must be compared to the value on the effective date of the plan of what the debtor proposes to distribute to the holders of allowed unsecured claims. Two mathematical calculations are required: (1) an estimate must be made of what would be available for distribution to unsecured claim holders in a Chapter 7 case; and (2) the distributions to unsecured claim holders under the proposed plan must be 'present valued' (discounted) as of the effective date of the plan. The proposed Chapter 13 plan must be present valued to compensate unsecured creditors for the delay in payments they would receive immediately in a liquidation proceeding. Moreover, for a Chapter 13 plan to satisfy the best interest of creditors test, []the capitalized present value of all deferred payments proposed to be distributed, together with the present value of any other property proposed to be distributed, to the holder of an allowed unsecured claim, must equal at least the liquidation value of the nonexempt property of the estate apportionable to the holder of such allowed unsecured claim. As part of the liquidation analysis calculation, the administrative expenses and the trustee's fees that would be incurred in a Chapter 7 must be deducted from the valuation of estate assets. Generally the present value calculation under [§] 1325(a)(4) is necessary only when the present valued (discounted) stream of payments to unsecured creditors is less than the Chapter 7 value.

14

505 B.R. at 114-15 (internal citations and quotation marks omitted). This two-step calculation necessarily requires the valuation of property by the bankruptcy court. Id. at 115.

Valuing property for the hypothetical Chapter 7 liquidation, however, is "not an exact science because the process entails a considerable degree of speculation." In re W.R. Grace, 475 B.R. at 142 (citations and internal quotation marks omitted). Nonetheless, "bankruptcy courts should issue their findings based on the record adduced at trial" and "proper evidence" rather than "mere assumptions or assertions." Id. (citations and internal quotation marks omitted). Accordingly, "the [bankruptcy] court need only make a well-reasoned estimate of the liquidation value that is supported by the evidence on the record." Id. Finally, it is the plan proponent who bears the burden of proof to establish by a preponderance of the evidence that the proposed plan is in the creditors' best interests. Id.; In re McKinney, 507 B.R. at 542.

In the instant case, Hackerman has consistently asserted that the proposed Chapter 13 plan fails to meet the requirements of § 1325(a)(4). He initially raised the issue in his objection to the plan, (R. at 87), as well as in his motion to convert, In re Demeza, No. 1:16-bk-02789 (Bankr. M.D. Pa. July 5, 2016), ECF No. 28 at 8-9. He again pressed the issue in the post-hearing briefing on the motion to convert, (R. at 980-81, 1024-26), and at the February 22, 2017 confirmation hearing, In re Demeza, No. 1:16-bk-02789 (Bankr. M.D. Pa. July 5, 2016), ECF No. 109 at 5-6. In several of his bankruptcy court filings, Hackerman provided his own detailed calculations on the value of a hypothetical Chapter 7 liquidation versus the proposed Chapter 13 plan payout. (R. at 980-81, 1024-26).

15

The bankruptcy court, however, did not perform the required calculations or make the appropriate findings regarding § 1325(a)(4) in either its written opinion on the motion to convert or at the confirmation hearing. It is quite understandable that the bankruptcy court's opinion on the motion to convert addressed only the good faith of the petition and plan, as Hackerman has consistently conflated and comingled the alleged facts and legal issues underlying his numerous grievances with Demeza's bankruptcy filing. For example, Hackerman's brief in support of his motion to convert contains the heading "The Debtor's Plan Is Not Proposed in Good Faith," beneath which he lists seven purportedly supporting reasons why this is so. (R. at 976-85). Confusingly, one of the supporting reasons Hackerman gives for why the plan does not comply with § 1325(a)(3) is that the plan does not meet the requirements of § 1325(a)(4). (R. at 980-83).

Nevertheless, at the confirmation hearing, the bankruptcy court had another opportunity to address Hackerman's § 1325(a)(4) claim. The court essentially deferred to the explanation of Charles DeHart, the Chapter 13 Trustee, regarding why he withdrew a similar objection. Mr. DeHart's testimony, however, consisted of little more than vague generalities regarding the hypothetical Chapter 7 valuation:

> MR. DeHART: That was part of my original objection was that determining the value of the property, and based on the information provided, we felt that sufficient funds were being paid less exemptions, and less both priority and attorney's fees to the unsecured creditors, all of which -- none of which is going to the secured.
>
> THE COURT: And you were considering totally -- you were looking at 100 percent [interest in the Property], or at 50 percent interest[?]
>
> MR. DeHART: I was looking at the 100 percent interest, less the exemptions.

16

> THE COURT: Okay.
>
> MR. DeHART: And then backing out the sale cost, backing out the -- any secured claim --
>
> THE COURT: Um-hum.
>
> MR. DeHART: -- and recognizing that they are paying both priority and they are paying attorney's fees, which also are part of what would otherwise go to unsecureds.
>
> THE COURT: Okay.
>
> MR. DeHART: It's the pot.
>
> THE COURT: Okay. Mr. Hackerman, I'm going to overrule your objection. . . .

In re Demeza, No. 1:16-bk-02789 (Bankr. M.D. Pa. July 5, 2016), ECF No. 109 at 6-7. As In re W.R. Grace and In re Cumba show, this vague conversation is insufficient to properly address a § 1325(a)(4) challenge to a proposed Chapter 13 plan. It would be exceedingly difficult, if not impossible, for this court, on appeal, to make the necessary calculations and valuations required under the best interests of the creditors tests. It is much more appropriate, and feasible, for the bankruptcy court to make such findings in the first instance.

Consequently, the court is constrained to vacate the February 23, 2017 amended order confirming the instant Chapter 13 plan and overruling Hackerman's objection, and to remand this case to the bankruptcy court. Upon remand, the bankruptcy court must make the appropriate findings, based on record evidence, of the valuations and calculations required by the best interests of the creditors test. See In re Cumba, 505 B.R. at 114-15. After such findings are made, the bankruptcy court must decide whether the requirements of § 1325(a)(4) are satisfied by the current plan, and therefore whether to

17

sustain or overrule Hackerman's objection.  Additionally, on remand, Demeza—the plan proponent—will bear the burden of proof to show by a preponderance of the evidence that his proposed Chapter 13 plan satisfies the best interests of the creditors test.

V. *Conclusion*

Based on the foregoing analysis, the court will affirm the bankruptcy court's order denying the motion to convert.  Furthermore, the court will leave undisturbed the bankruptcy court's finding that Demeza's Chapter 13 plan was proposed in good faith; Hackerman waived this issue on appeal, and even if he did not, the bankruptcy court's decision is free from clear error.

Finally, the court will vacate the bankruptcy court's February 23, 2017 amended order confirming the plan and overruling Hackerman's objection, and will remand this case to the bankruptcy court to properly address Hackerman's § 1325(a)(4) claim.  An appropriate order will follow.

/s/ William W. Caldwell
William W. Caldwell
United States District Judge